# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**LENA MAE FAIRBROTHER,**

        Plaintiff,

v.                                                         Case No: 6:17-cv-1306-Orl-DCI

**COMMISSIONER OF SOCIAL SECURITY,**

        Defendant.

## MEMORANDUM OF DECISION

Lena Mae Fairbrother (Claimant) appeals the Commissioner of Social Security's final decision denying her applications for disability benefits and supplemental security income. Doc. 1. Claimant argues that the Administrative Law Judge (ALJ) erred by: 1) finding that Claimant could perform her past relevant work; and 2) failing to give appropriate weight to the opinions of Claimant's treating physician, Dr. Gary Weiss, M.D. (a neurologist). Doc. 19. Claimant requests that the matter be reversed and remanded for a supplemental hearing. *Id*. at 29. For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

## I.  PROCEDURAL HISTORY.

This case stems from Claimant's applications for disability insurance benefits and supplemental security income. R. 11; Doc. 19 at 1. Claimant alleged a disability onset date of February 28, 2014. R. 11. Claimant's applications were denied on initial review and on reconsideration. *Id*. The matter then proceeded before an ALJ. *Id*. On January 10, 2017, the ALJ held a hearing, at which Claimant and his representative (the same attorney filing this appeal) appeared. *Id*. The ALJ entered his decision on February 15, 2017. *Id*. Claimant timely pursued

her administrative remedies, and this matter is ripe for review under 42 U.S.C. § 405(g). Doc. 19 at 1-2.

## II. THE ALJ'S DECISION.

In his decision, the ALJ found that Claimant had the following severe impairments: degenerative disc disease and degenerative joint disease. R. 13. The ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals any listed impairment. R. 14.

The ALJ found that Claimant has the residual functional capacity (RFC):

> to lift and/or carry 25-30 pounds occasionally and 10-15 pounds frequently, sit for a total of 6 hours in an 8-hour day, and stand/walk for a total of 4-5 hours in an 8-hour day. She can occasionally climb stairs/ramps, stoop, kneel, crouch, and crawl. The claimant is also limited to frequent reaching overhead with her dominant right upper extremity.

R. 14.[1] Relying on this RFC and the testimony of the Vocational Expert (VE), the ALJ found that Claimant was unable to perform her past relevant work as actually performed but that Claimant was able to perform her past relevant work as a Cashier II as that work is generally performed. R. 18-19.[2] Thus, the ALJ concluded that Claimant was not disabled from the alleged disability onset date (February 28, 2014) through the date of the decision (February 15, 2017). R. 18-19.

## III. STANDARD OF REVIEW.

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). The

---

[1] An RFC determination generally indicates whether a claimant is capable of performing heavy, medium, light, or sedentary work. That did not occur in this case. *See* R. 14.

[2] The ALJ elected not to proceed to step five of the sequential evaluation process. *See* R. 19.

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

IV. **ANALYSIS**.

    **A. Past Relevant Work**

As her first assignment of error, Claimant asserts that the ALJ erred by determining that Claimant is capable of performing her past relevant work as a Cashier II. Doc. 19 at 12-14. Claimant argues that the ALJ "mistakenly" held that the VE opined that Claimant could perform the job of Cashier II "as it is generally performed." *Id*. at 13. The crux of Claimant's argument is that the VE stated that there are 800,000 jobs in the national economy with the description "Cashier II," but, based upon the RFC, Claimant could perform only about 20,000 of those jobs. *Id*. Thus, citing to Social Security Ruling (SSR) 82-61, Claimant asserts that because Claimant could only

perform 20,000 out of 800,000 Cashier jobs, Claimant could not perform the job of Cashier II "as it is generally performed." *Id*. Other than a reference to SSR 82-61, Claimant cited no legal authority for that proposition. *Id*.

In response, the Commissioner argues simply that the VE opined that there are 20,000 Cashier II jobs that, as generally performed, Claimant could perform. *Id*. at 15. Thus, substantial evidence supported the ALJ's conclusion that Claimant could perform her past relevant work as a Cashier II. *Id*.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips*, 357 F.3d at 1238. The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). In evaluating the claimant's RFC, the ALJ considers the claimant's ability to "meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). A claimant is not disabled if the claimant can return to the claimant's past relevant work. *Id*. at §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). To qualify as past relevant work, the work must have been done: 1) within the last fifteen (15) years; 2) long enough for the claimant to learn to do it; and 3) at a level constituting substantial gainful activity. *Id*. at §§ 404.1565(a), 416.965(a). The ALJ may consider the testimony of a VE in determining whether the claimant can perform his past relevant work, *Hennes v. Comm'r of Soc. Sec. Admin.*, 130 F. App'x 343, 346 (11th Cir. 2005), and other jobs in the national economy, *Phillips*, 357 F.3d at 1240. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which is accurate and includes all of a claimant's limitations. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ, however, is not required to include each and every symptom of the claimant's

impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical findings that the ALJ properly rejected as unsupported, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004), in the hypothetical question. "The burden is on the claimant to show that she can no longer perform her past relevant work as she actually performed it, or as it is performed in the general economy." *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010) (citing *Jackson v. Bowen,* 801 F.2d 1291, 1293–94 (11th Cir.1986)).

Here, Claimant does not challenge the propriety of the RFC, the ALJ's hypothetical questions to the VE, or the nature of Claimant's past relevant work. Instead, Claimant seeks to have the Court find as a matter of law that: if Claimant could perform only 20,000 of 800,000 possible positions in the national economy doing her past relevant work, then Claimant could not perform that work "as it is generally performed." But Claimant cites no legal authority – and makes no compelling argument – for that proposition. Although Claimant points to SSR 82-61, she does so only for the underlying proposition that a claimant is not disabled if she can perform her past relevant work "as ordinarily required by employers throughout the national economy." *Id*. at 13. Thus, the regulation itself provides no support for Claimant's actual argument. So the Court is left with a fairly ambiguous invitation to set an arbitrary numerical guideline for use in defining the phrase: "as it is generally performed." The Court declines to do so. The Court's obligation is to determine whether substantial evidence supports the ALJ's decision; substantial evidence is more than a scintilla. *See Foote*, 67 F.3d at 1560. Based on the VE's testimony in response to the ALJ's hypothetical questions, which in turn were based appropriately on the RFC, the ALJ concluded that Claimant could perform the job of Cashier II because there existed 20,000 of those jobs that Claimant could perform in the national economy. The Court finds that the VE's testimony constituted substantial evidence in support of the ALJ's conclusion that Claimant could

perform that job as it is generally performed. The fact that there *also* existed hundreds of thousands of positions for that job that Claimant could not perform does not change this conclusion. The Court makes this finding in light of its obligation not to reweigh the evidence and considering that Claimant bears the burden to establish that she cannot perform her past relevant work. Accordingly, Claimant's first assignment of error is rejected.

### B. Medical Opinion.

As her second assignment of error, Claimant asserts that the ALJ erred by assigning "little weight" to Dr. Weiss's opinions as stated in his November 11, 2016 assessment, which Claimant states conflicts with the RFC. Doc. 19 at 15-23. Claimant asserts that the ALJ's decision to assign "little weight" to Dr. Weiss's opinions was supported only by conclusory statements and that other medical evidence either weighed against the ALJ's decision or should not have been used to undermine Dr. Weiss's assessment. *Id*. The Commissioner argues that the ALJ provided good cause reasons for assigning Dr. Weiss's opinion little weight, and that Claimant simply ignores these reasons in her argument. *Id*. at 23-30.

The ALJ assesses the claimant's RFC and ability to perform past relevant work at step four of the sequential evaluation process. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c).

The consideration and weighing of medical opinions is an integral part in determining the claimant's RFC. The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence

and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Id*. The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Id*. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

According to the record, on July 24, 2014, Claimant was sent to Dr. Homi Cooper, M.D. for a consultative evaluation at the request of the Division of Disability Determinations. *See* R. 338. On examination, Claimant had no cervical, thoracic, or lumbosacral paraspinal muscle spasms; negative straight leg raise; and full range of motion of the shoulders, elbows, wrists, hands, hips, knees, ankles, and toes. R. 341. When assessing shoulder range of motion, Dr. Cooper noted "marked subacromial crepitus on the right and to a lesser extent on the left." *Id*. Strength was still 5/5. *Id*. She had 5/5 motor strength throughout with normal grip strength, normal muscle tone, normal sensation, normal gait, and no muscle wasting. *Id*. Dr. Cooper diagnosed neck pain with history of right radiculopathy "probably due to degenerative disc and joint disease but no significant objective medical findings or altered physiology." *Id*. at 342. He also diagnosed low

back pain "probably due to degenerative disc and joint disease with numbness in the legs, without objective relevant medical findings." *Id*. Dr. Cooper diagnosed bilateral impingement syndrome, more on the right than on the left, affecting both shoulders. *Id*. Dr. Cooper opined Claimant could stand no more that 4-5 hours out of an 8-hour day with usual rest breaks on an intermittent basis; sit for 6-7 hours out of an 8-hour day; lift and carry up to 10-15 pounds frequently and up to 25-30 pounds occasionally; and should not perform repeated overhead work with the right arm. *Id*.

On December 30, 2014, Dr. Cooper again examined Claimant – this time at the request of the Florida Division of Vocational Rehabilitation. *See* R. 400. Claimant reported being able to do "some" household cleaning, grocery shopping, laundry, cooking, driving, and using computer. *Id*. On exam, Claimant reported pain levels of 6 to 8. R. 401. Claimant had good vertebral posture without paraspinal muscle spasms. *Id*. Claimant had full range of motion of the cervical, thoracic, and lumbosacral spines as well as in her elbows, wrists, hands, hips, knees, ankles, and toes. *Id*. Dr. Cooper noted full range of motion in the shoulders with pain between 90 and 130 degrees in the right shoulder. R. 402. She had internal and external rotation of the shoulders with palpable subacromial crepitus more prominently on the right than on the left. *Id*. Strength was normal in all extremities, including her shoulders, with normal muscle tone and no muscle wasting. *Id*. Sensory testing was normal. *Id*. Claimant had a normal gait and stance, heel-toe walking, and tandem gait. *Id*. She could balance. *Id*. Dr. Cooper provided no opinion regarding Claimant's limitations. R. 403.

On February 4, 2015, Claimant underwent a right shoulder MRI, which revealed a small undersurface tear of the supraspinatus tendon measuring 3.00 mm in coronal diameter. R. 358. There was fluid in the subacromial subdeltoid bursa compatible with bursitis. *Id*. There was fluid in the long head of the biceps tendon sleeve compatible with biceps tendonitis. *Id*. A lumbar MRI

on that same date revealed mild disc bulges at L2-3, L3-4, L4-5 and L5-S1.  R. 359-60.  There was mild facet hypertrophy at L4-5 and L5-S1.  *Id*.  There was straightening of the normal lumbar lordotic curvature.  R. 360.

On October 20, 2015, Claimant went to Dr. Weiss, a neurologist, for an initial Neurologic Evaluation.  *See* R. 387.  On exam, Claimant had an antalgic gait and +1 tandem ataxia with no drift and a negative Romberg sign.  R. 389.  Lower extremity reflexes were +3/+3 with bilateral Babinski signs.  *Id*.  She had normal and symmetric motor strength throughout with normal sensation no evidence of atrophy or fasciculations.  *Id*.  Cervical range of motion was decreased -2 with extension, -2 with right lateral movement, -2 with left lateral movement, and -2 with flexion.  R. 390.  There were psp (paraspinal) muscle spasms of +2/+2 and tenderness of +2/+2 in both cervical and thoracic spine.  *Id*.  Lumbar spine range of motion was also decreased -2 with extension, right lateral movement, left lateral movement, and flexion.  *Id*.  Claimant's right shoulder had decreased range of motion and tenderness to palpation with crepitus during movement.  *Id*.  Dr. Weiss reviewed the February 4, 2015 MRIs of the right shoulder, lumbar spine, and cervical spine.  *Id*.  Dr. Weiss assessed neck pain with radicular symptoms, right shoulder pain with impingement and tear, and low back pain with left greater than right radiculopathy.  *Id*.

On December 29, 2015, Claimant again visited Dr. Weiss and reported pain level of 7/10.  R. 395.  Claimant also reported the neck pain is aggravated by sitting at the computer, crocheting, and leaning on the right side.  *Id*.  On exam, Dr. Weiss noted an antalgic gait and +1 tandem ataxia R. 397.  Motor strength was normal.  *Id*.  Lower extremity reflexes were +3/+3 with bilateral Babinski signs.  *Id*.  Cervical and lumbar spine motions were reduced.  R. 398.  Right shoulder ROM was also reduced with tenderness on palpation.  *Id*.  There was crepitus with movement.  *Id*.

Dr. Weiss reviewed the MRI's of February 4, 2015 and diagnosed neck pain with radicular symptoms, right shoulder pain with impingement and tear, low back pain with radicular symptoms, bilateral hip pain, and possible cord compression. *Id*. Dr. Weiss opined that Claimant needs shoulder surgery but she cannot afford it. R. 399. Dr. Weiss opined Claimant may need spine surgery as well. *Id*.

On November 11, 2016, Dr. Weiss opined that, for the time period from October 20, 2015 through December 29, 2015, Claimant had the following functional limitations: Claimant should not sit more than a total of 3 hours or stand/walk more than a total of 2 hours in an 8-hour day so as not to aggravate her injuries. R. 414. Dr. Weiss opined Claimant should not sit without interruption for more than 30-60 minutes and should not stand and/or walk without interruption for more than 10-20 minutes. *Id*. Dr. Weiss opined Claimant would need to lie down for a total of 3 hours in an 8-hour day. *Id*. In support, Dr. Weiss noted his neurological exam revealed deficits in the cervical, thoracic, and lumbar spine regions. *Id*. He also had reviewed prior test results. *Id*. Dr. Weiss opined Claimant would need to lie down or recline to rest every 1 to 2 hours for 15 to 30 minutes in an 8-hour day. *Id*. In support, Dr. Weiss noted Claimant had neck and low back pain with radicular symptoms and abnormal examination findings. *Id*. Dr. Weiss opined Claimant had symptoms indicating a possible cord compression vs CNS etiology. *Id*. Dr. Weiss opined Claimant would be absent from work 3 or more times a month. R. 415. In support, Dr. Weiss noted Claimant had severe pain in the neck, right shoulder, low back, and hips with possible cord compression. *Id*. Dr. Weiss opined Claimant should never stoop, climb, balance, crouch, kneel, or crawl. *Id*. Dr. Weiss opined Claimant would have difficulty reaching above her head or pushing/pulling with hands. *Id*. In support, Dr. Weiss noted decreased cervical spine motions -2 in all directions with paraspinal muscle spasms and tenderness and reduced ROM in right shoulder

with tenderness and crepitus. R. 416. Dr. Weiss opined Claimant should not repetitively use her hands. *Id*. Dr. Weiss opined Claimant should not be exposed to even low stress work conditions. *Id*. Dr. Weiss found no evidence of malingering or symptoms exaggeration. *Id*.

The ALJ discussed Dr. Weiss's opinion, and assigned it little weight, explaining:

> Simply stated, the objective medical evidence before the undersigned does not corroborate the claimant's subjective complaints. On February 4, 2015, an MRI of the claimant's cervical spine revealed preserved disc height at the C2-3 and C3-4 cervical levels with no signs of disc protrusion. At both C4-5 and C6-7, the MRI revealed only mild bulging and, again, preserved disc heights. Concerning the C5-6 level, the imaging indicated only "moderate" disc posterior osteophyte complex, "mild" hypertrophic degenerative changes, and mild narrowing. Finally, there was no sign of protrusion at the C7-Tl cervical level and only mild hypertrophic changes and narrowing. (Exhibit B4F, Page 1).[3]
>
> Other imaging of the claimant's musculoskeletal system has also been inconsistent with the type of limitations alleged by the claimant. An MRI of the claimant's lumbar spine, taken on the same day as the cervical spine imaging described above, was similarly unconvincing. Bulging was noted at the L2-3, L3-4, L4-5, and L5-Sl lumbar levels. However, the ventral deformity of the thecal sac caused by the bulging was deemed to only be "mild in degree" at all levels. The narrowing and degenerative changes at all levels were also determined to be "mild" in nature as well. (Exhibit B4F, Pages 4-5). As for the claimant's right shoulder, another MRI revealed only "mild" hypertrophic changes of the acromioclavicular joint producing a "mild impingement". The MRI also suggested only "mild" degenerative changes to the posterolateral head and a "small" undersurface tear of the supraspinatus tendon. (Exhibit B4F, Page 3). Overall, the residual functional capacity indicated provides an accurate depiction of the claimant's capabilities with these objective findings taken into account.
>
> Again, the undersigned acknowledges the claimant's subjective complaints scattered throughout the records. On October 29, 2015, examination revealed reduced cervical spine, lumbar spine, and right shoulder motions. Tenderness was also noted at each of these

---

[3] This refers to the MRI of the cervical spine conduced on February 4, 2015 and reviewed by Dr. Weiss. R. 356-57.

locations as well as the thoracic spine. Physical examination, however, confirmed "normal and symmetric" strength in all four extremities with "no evidence of atrophy or fasciculations." (Exhibit B9F, Page 4).[4] Similar findings were made upon examination on December 29, 2015. (Exhibit Bl0F, Page 5). Overall, while these findings again confirm the presence of impairments, the mere presence of impairments and limitations do not automatically equate to a finding of disability. Rather the limitations must be of the type that would preclude all work activity. The limitations reflected in these records are taken into account in the residual functional capacity indicated.[5]

The undersigned acknowledges that Dr. Gary Weiss completed a physical restrictions evaluation wherein he opined that the claimant was incapable of sitting and standing/walking for a total of 8 hours in a workday. He further opined that the claimant would be absent from work "3 or more times" each month due to her impairments and/or doctor's appointments. In addition, it was Dr. Weiss' opinion that the claimant was limited to lifting and/or carrying only half of a pound for 1/3 of an 8-hour workday. According to Dr. Weiss, these opinions were based on the claimant's "severe pain in the neck, [right] shoulder, low back, [and] hips". (See Bl3F).[6]

Dr. Weiss's opinions on the severity of the claimant's condition are given little weight as they are unsupported by and inconsistent with the medical record as a whole. Pursuant to the provisions of Social Security Ruling 96-5p, while Social Security is not bound by treating source medical opinions on "issues reserved to the Commissioner", adjudicators must nonetheless weigh medical source statements under the rules set out in 20 CFR 404.1527 and 416.927, providing appropriate explanations for rejecting such opinions. Based on the foregoing, the undersigned finds that there are specific and legitimate reasons to reject Dr. Weiss's unreasonably restrictive assessment and, therefore, accords little weight to the opinions. (Social Security Ruling 96-2p). The totality of the medical records simply fails to support Dr. Weiss's opinions.

The objective medical evidence before the undersigned is inconsistent with the extent of limitations opined by Dr. Weiss. While it is evident that the claimant does have severe physical

---

[4] Although not explicitly identified as such, these are treatment records of Dr. Weiss.

[5] Although not explicitly identified as such, these are also treatment records of Dr. Weiss.

[6] This is Dr. Weiss's November 11, 2016 assessment.

> impairments, the levels of severity of the impairments as they are reflected in the records are not supportive of the extreme limitations opined by Dr. Weiss. Overall, the undersigned finds that Dr. Weiss's opinions are not supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the objective and other substantial evidence of record *(e.g.,* Exhibits B7A, B8A, B2F, B4F, Bl1F, and Bl2F).[7] Moreover, the undersigned accords little weight to this opinion due to the short duration of treatment (i.e., Dr. Weiss's opinions were based on a little over a two-month period of treatment).

R. 17-18. Thus, the ALJ assigned Dr. Weiss's opinion little weight because his opinion was inconsistent with, and not supported by, the medical evidence of record, including both the objective medical evidence and the opinions of other evaluating medical sources. *Id*. The ALJ also took into consideration the extremely limited duration of Dr. Weiss's treatment of Claimant. *Id*.

The ALJ stated reasons supported by citations to record evidence for assigning Dr. Weiss's opinion little weight, but, in her brief, Claimant simply asserts that these reasons are conclusory and argues that the ALJ's decision was not supported by substantial evidence. Doc. 19 at 17. While Claimant asserts that the ALJ relied on *no* medical evidence to reject Dr. Weiss's opinion, she also argues that the ALJ erred by utilizing and relying upon Dr. Cooper's opinions to reject Dr. Weiss's opinion. *Id*. at 18-19. The first argument is patently incorrect and, even if it were not, is contradicted by the second argument. Then, in the middle of her second argument, Claimant makes a perfunctory assertion that the ALJ erred by ignoring certain aspects of Dr. Cooper's opinion. *Id*. at 19. The Court finds that Claimant's perfunctory arguments are waived. *See, e.g.,*

---

[7] The records cited as examples in support of the ALJ's determination are the Disability Determinations dated October 16, 2014 (Ex. 7A and 8A), Dr. Cooper's evaluation dated July 24, 2014 (Ex. 2F), the MRIs dated February 4, 2015 (Ex. 4F), Dr. Cooper's evaluation dated December 30, 2014 (Ex. 11F), and a radiology report from Holmes Regional Medical Center dated June 3, 2015 (Ex. 12F).

*Jacobus v. Comm'r of Soc. Sec.*, No. 15-14609, 2016 WL 6080607, at *3 n.2 (11th Cir. Oct. 18, 2016) (stating that claimant's perfunctory argument was arguably abandoned); *Gombash v. Comm'r of Soc. Sec.*, 566 Fed. App'x. 857, 858 n.1 (11th Cir. 2014) (stating that the issue was not properly presented on appeal where claimant provided no supporting argument); *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Gaskey v. Colvin*, No. 4:12-CV-3833-AKK, 2014 WL 4809410, at *7 (N.D. Ala. Sept. 26, 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision) (citing *Singh v. U.S. Atty. Gen*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal."))[8] Claimant then transitions to another perfunctory argument that the ALJ erred because Claimant could not afford treatment, but that argument concerned the ALJ's credibility determination, which Claimant has not challenged, Doc. 19 at 20; thus, Claimant waived any argument challenging the ALJ's credibility determination. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (refusing to consider an argument that the claimant failed to raise before the district court).[9] Claimant concludes by arguing that the ALJ erred by giving Dr. Cooper's opinion

---

[8] Even if the Court found that Claimant properly raised her challenge that the ALJ "ignored" the portions of Dr. Cooper's opinion that alleged stated that Claimant "should not perform repeated overhead work with the right arm," and even if the Court found that the ALJ did, in fact, "ignore" that alleged functional limitation, the Court finds that any error by the ALJ was harmless because that alleged functional limitation is not inconsistent with the RFC, which contained limitations related to Claimant's ability to reach overhead with her right arm. R. 14; *see, e.g., Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar).

more weight than Dr. Weiss's opinion, because Dr. Weiss was a treating physician and Dr. Cooper was simply an evaluating physician. Doc. 19 at 20-23.

The Court finds that the ALJ stated good cause to assign Dr. Weiss's opinions little weight. Just prior to the ALJ's discussion of Dr. Weiss's opinions, the ALJ engaged in a detailed discussion of the February 4, 2015 MRI reports. The ALJ repeatedly described those MRI findings as mild and stated that those objective medical records supported the RFC. Then, although the ALJ did not specifically name them as such, the ALJ discussed Dr. Weiss's treatment notes. The ALJ noted Claimant's subjective complaints within these records as well as the impairments identified by Dr. Weiss, and the ALJ explained that the limitations contained within Dr. Weiss's treatment notes were taken into account in the RFC. Next, the ALJ explicitly considered Dr. Weiss's November 11, 2016 Assessment, which is the opinion at issue in this case. That opinion included extremely restrictive functional limitations, and the ALJ gave that opinion "little weight" because it was "unsupported by and inconsistent with the medical record as a whole." The ALJ went on to explain that "Dr. Weiss's opinions are not supported by medically acceptable clinical and laboratory diagnostic techniques and are inconsistent with the objective and other substantial evidence of record." The ALJ then cited to several examples of the specific records on which he relied, including the Disability Determinations dated October 16, 2014 (Ex. 7A and 8A), Dr. Cooper's evaluation dated July 24, 2014 (Ex. 2F), the MRIs dated February 4, 2015 (Ex. 4F), Dr. Cooper's evaluation dated December 30, 2014 (Ex. 11F), and a radiology report from Holmes Regional Medical Center dated June 3, 2015 (Ex. 12F).

While Claimant appears to take issue with the ALJ's consideration of Dr. Cooper's evaluations to discredit Dr. Weiss's opinion, Claimant does not challenge the ALJ's decision to discredit Dr. Weiss's opinion by relying upon the Disability Determinations dated October 16,

2014 (Ex. 7A and 8A), the MRIs dated February 4, 2015 (Ex. 4F), and the radiology report from Holmes Regional Medical Center dated June 3, 2015 (Ex. 12F).  Thus, for example, the MRIs (which the ALJ discussed in detail prior to discrediting Dr. Weiss's opinion) constitute both objective medical evidence that is inconsistent with and contrary to Dr. Weiss's opinion and substantial evidence supporting the ALJ's decision.  So there exists record evidence – apart from Dr. Cooper's evaluations – supporting the ALJ's decision to discredit Dr. Weiss's opinion.  Nevertheless, the ALJ did not err by utilizing Dr. Cooper's opinions in discrediting Dr. Weiss's opinion.  Indeed, the ALJ gave Dr. Cooper's opinions from Dr. Cooper's first evaluation "great weight" and found that Dr. Cooper's opinions were "consistent with the objective and other substantial evidence of record," citing to the MRIs, Dr. Cooper's later evaluation, and the radiology report from Holmes Regional Medical Center.  R. 16.

Further, although the Court recognizes that Dr. Cooper is an examining physician and Dr. Weiss is a treating physician, the fact remains that Dr. Cooper and Dr. Weiss examined Claimant the same number of times: twice.  The opinions of treating physicians are generally entitled to controlling weight, but this is in large part due to the nature of the on-going treatment relationship they generally have with a patient.  See 20 C.F.R. § 404.1527(d)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the treating source's medical opinion.").  Thus, the ALJ's statement that he gave little weight to Dr. Weiss's opinion, in part, due to the short duration of treatment – combined with the fact that the ALJ cited to Dr. Cooper's opinions and treatment notes and other medical evidence (such as objective testing and Claimant's physical examination findings) – provides substantial evidence in support of the ALJ's decision.  And the Court will not reweigh the evidence – the Court must simply determine whether substantial evidence exists to support the ALJ's decision.  Where the Commissioner's decision is supported by substantial evidence, as it is here, the Court will affirm,

even if the Court would have reached a contrary result as finder of fact, and even if the Court finds that the evidence preponderates against the ALJ's decision. *Edwards*, 937 F.2d at 584.

The ALJ, in light of the foregoing, stated good cause to assign little weight to Dr. Weiss's opinion.[10] These reasons, as discussed above, are supported by substantial evidence, and, together, support the ALJ's decision to assign little weight to Dr. Weiss's opinion. Therefore, the Court finds that the ALJ did not err in assigning Dr. Weiss's opinion little weight and rejects Claimant's second assignment of error.

## V. CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Commissioner and close the case.

**DONE** and **ORDERED** in Orlando, Florida on August 1, 2018.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

---

[10] Even if some of the ALJ's reasons appear relatively conclusory and, thus, do not appear to support the ALJ's determination to assign little weight to Dr. Weiss's opinion, that would not undermine the reasons already discussed herein. Thus, to the extent other reasons articulated by the ALJ are conclusory, the Court finds that does not undermine the ALJ's determination to assign little weight to Dr. Weiss's opinion. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it."); *see also Gilmore v. Astrue*, 2010 WL 989635, at *14-18 (N.D. Fla. Feb. 18, 2010) (finding that the ALJ's decision to discount a treating physician's opinion was supported by substantial evidence, even though two of the many reasons articulated by the ALJ were not supported by substantial evidence).

Copies to:
Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Richard J. Ortiz-Valero
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
Suite 1000, 10th Floor
500 East Broward Blvd
Ft. Lauderdale, FL 33394-3026